**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID GAMBINO,** | ) | |
| **Plaintiff** | ) | **C.A. 14-236 Erie** |
| | ) | |
| **v.** | ) | **District Judge Rothstein** |
| | ) | **Magistrate Judge Baxter** |
| **FEDERAL CORRECTIONAL** | ) | |
| **INSTITUTION - MCKEAN, et al.,** | ) | |
| **Defendants.** | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss, or in the alternative,
motion for summary judgment [ECF No. 27], be granted in part and denied in part.


### II.      REPORT

#### A.      Relevant Procedural History

On September 8, 2014, Plaintiff David A. Gambino, a prisoner formerly incarcerated at

the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"),[1]

filed this *pro se* civil rights action pursuant to Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff subsequently filed an amended

complaint on November 21, 2014, which superseded the original complaint and is the operative

pleading in this case. [ECF No. 16]. Named as Defendants in the amended complaint are the

---

[1] Plaintiff is presently incarcerated at the Federal Correctional Institution at Cumberland, Maryland.

following alleged staff members at FCI-McKean:  Bobby Meeks, Warden ("Meeks"); Assistant Warden "Hubbard";[2] Dr. Michael Walt, Clinical Director ("Walt"); Pieter Van Horn, Health Services Administrator ("Van Horn"); Franklin Troublefield, Lieutenant ("Troublefield"); Keith Stauffer, Case Manager ("Stauffer"); John Siffrinn, Correctional Officer (incorrectly identified as "Counsler Shiffrinn" in the amended complaint) ("Siffrinn"); and five unidentified Defendants, named as "Medical Nurse," "Medical Nurse 2," "L.T.," "Officer 1," and "Officer 2."[3]

In his *pro* se amended complaint, Plaintiff lists multiple counts alleging that one or more of the Defendants violated his constitutional rights and caused him injury: (1) Defendants Troublefield, Van Horn, and Kengersky allegedly denied him emergency medical treatment from June 19, 2014 to June 24, 2014, which caused him to suffer injury on June 25, 2014 (ECF No. 16, at pp. 3-8); (2) Defendant Kengersky allegedly denied him medical treatment on the morning of June 25, 2014 (Id. at pp. 9-12); (3) Defendants Meeks, Walt, Van Horn, Kengersky, Stauffer, and Siffrinn allegedly failed to protect him from abuse and subjected him to unnecessary pain and suffering by disregarding his medical needs following his injury of June 25, 2014 (Id. at pp. 17-22); (4) Defendants Kengersky, Troublefield, Siffrinn, Van Horn, and Stauffer allegedly worked in concert to retaliate against him (Id. at pp. 23-27); (5) since January 20, 2014,

_____

2

In their Brief, Defendants have informed the Court that there was no individual named "Hubbard" who worked at FCI-McKean in 2014. Thus, Defendant "Hubbard" should be terminated from this case.

3

None of the unidentified Defendants has since been identified or served in this case by Plaintiff, nor has an attorney entered an appearance on behalf of any of them. As a result, it will be recommended that these Defendants be dismissed from this action, and Plaintiff's claims against these Defendants will not be considered here.

Defendant Stauffer has allegedly violated his First Amendment rights by reading his protected legal mail (Id. at pp. 28-30); (6) Defendants Troublefield and Siffrinn allegedly violated his rights under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d ("HIPAA") by discussing his private medical information over the phone with third parties without his consent. (Id. at pp. 31-33); (7) Defendants Meeks, Kengersky, Van Horn, Troublefield, Stauffer, and Siffrinn allegedly obstructed justice by failing to protect him as a witness to the purported wrongful death of a fellow inmate on July 25, 2014 (Id. at pp. 34-37); and (8) Defendant Kengersky allegedly violated his Eighth Amendment rights by discontinuing his medications and medical aids from September 4, 2014 to October 20, 2014 (Id. at pp. 38-40). As relief for his claims, Plaintiff seeks injunctive relief and monetary damages.

On March 16, 2015, Defendants filed a motion to dismiss Plaintiff's amended complaint or, in the alternative, motion for summary judgment [ECF No. 27], asserting that: (i) Plaintiff has failed to exhaust his administrative remedies with regard to his claims; (ii) Plaintiff cannot demonstrate that Defendants were deliberately indifferent to either his serious medical needs or his health and safety; (iii) Non-medical Defendants cannot be held liable for Plaintiff's medical claims; (iv) Plaintiff cannot establish a First Amendment retaliation claim; (v) Plaintiff cannot establish a claim of either denial of access to the courts or interference with legal mail; (vi) HIPAA does not create a private right of action; (vii) Plaintiff does not have a constitutional right to see another inmate's records; (viii) Defendants Meeks, Walt, Troublefield, and Stauffer should be dismissed from this case because Plaintiff has failed to allege their personal involvement in the alleged constitutional violations; (ix) Defendants are entitled to qualified immunity; (x)

Defendant Van Horn is entitled to absolute immunity; and (xi) all unidentified Defendants should be dismissed. Plaintiff has since filed a brief in opposition to Defendants' motion. [ECF No. 35]. This matter is now ripe for consideration.

**B.** **Standards of Review**

**1.** **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice

4

and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

## 2. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary

5

judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id.

### **3.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (Apetition prepared by a prisoner... may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### **C.** **Exhaustion of Administrative Remedies**

Defendants contend that Plaintiff's complaint should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section
> 1983 of this title ... by a prisoner confined in any jail, prisons, or other
> correctional facility until such administrative remedies as are available

are exhausted.

Id.[4]

## 1. Exhaustion Standard

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[5] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[6] The PLRA also requires "proper exhaustion" meaning that a prisoner must

---

[4]
It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) (".. failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[5]
Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[6]
There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").

complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

**2.      The Administrative Process Available to Federal Inmates**

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 107 U.S. at 217.

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to

informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### **3.** **Analysis**

In support of their contention that Plaintiff failed to exhaust his administrative remedies, Defendants have submitted the Declaration of Kimberly Sutton, a Paralegal Specialist with the Federal Bureau of Prisons' Northeast Regional Office, who declares, in pertinent part:

> 5.    A review of Sentry [the BOP's computerized database] shows that [Plaintiff] has not exhausted his available administrative remedies for any of the allegations [Plaintiff] raised in his Amended Complaint.
>
> 6.    [Plaintiff] filed a Request for Administrative Remedy (No. 792502-F1) at FCI McKean on September 3, 2014, concerning a medical visit and perceived harassment. That request was rejected that same date because [Plaintiff] failed to ask for a remedy. [Plaintiff] did not re-file his Request for Administrative Remedy concerning this issue again….

7.      [Plaintiff] filed a Request for Administrative Remedy (No. 792505-F1) at FCI McKean on September 3, 2014, concerning his perceived harassment by staff. That request was rejected that same date because Plaintiff again failed to ask for a remedy and attached too many continuation pages. [Plaintiff] did not re-file his Request for Administrative Remedy concerning this issue again….

8.      [Plaintiff] filed no other Request for Administrative Remedy concerning any other issue.

(ECF No. 28-1 at ¶¶ 5-8).

However, in response, Plaintiff alleges that Defendants denied him access to the grievance process by refusing to correctly process his grievances, making retaliatory threats, and issuing false misconducts against him. (ECF No. 35, Plaintiff's opposition brief, at p. 13). In particular, Plaintiff contends that Defendants Stauffer and Siffrinn delayed the filing of his administrative remedy requests for up to four months (Id. at p. 24, ¶ 6); Defendant Troublefield threatened to return him to the Special Housing Unit and to label him as a sexual predator if he continued to complain of staff harassment and abuse (Id. at p. 21, ¶¶ 1, 2); and Defendants worked in concert to take away his privileges through the issuance of false misconducts, which allegedly hindered his ability to access the grievance system (Id. at pp. 22-23, ¶¶ 3-5). In addition, Plaintiff has submitted a number of exhibits that appear to partially support these allegations. (ECF Nos. 35-3 and 35-4).[7]

The Third Circuit has invariably held that interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process. Mitchell v. Horn, 318

---

[7] Of particular note, these exhibits contain copies of two administrative remedy requests that were received from Plaintiff on June 30, 2014, but did not receive a response until August 28, 2014, and a third administrative remedy request that was received from Plaintiff on September 24, 2014, but did not receive a response until January 27, 2015.

F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). <u>See</u> <u>also</u> <u>Berry v. Klem</u>, 283 Fed. Appx. 1, 5 (3d Cir. March 20, 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); <u>McKinney v. Guthrie</u>, 2009 WL 274159, at * 1 (3d Cir. Feb. 20, 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process.").

Here, Plaintiff's allegations and supporting documents raise a genuine issue of material fact as to whether the administrative remedy process was indeed made available to Plaintiff. As a result, Plaintiff's claims should not be dismissed based upon Plaintiff's failure to comply with the PLRA's exhaustion requirements.

## D. Discussion

### 1. Eighth Amendment Claim v. Defendants Troublefield, Van Horn, and Kengersky – June 19, 2014 – June 24, 2014

Plaintiff claims that Defendants Troublefield, Van Horn, and Kengersky denied him emergency medical treatment from June 19, 2014 to June 24, 2014, which allegedly caused him to suffer injury on June 25, 2014.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs.

Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need[8] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has

---

8

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

been offered to the inmate. <u>Clark v. Doe</u>, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, Plaintiff alleges that, from June 19, 2014 to June 24, 2014, Defendants Troublefield, Van Horn, and Kengersky denied him emergency medical treatment for "extreme unbearable pain due to injury to spine in the neck region…." (ECF No. 16, Amended Complaint, at p. 4, ¶ 1). These allegations are belied by Plaintiff's medical records. In particular, on June 19, 2014, Plaintiff reported to sick call complaining of right shoulder pain within the joint, which was treated with a shot of Toradol for pain management. (ECF No. 28-6, Plaintiff's medical records, at pp. 117-118). Plaintiff had a follow-up visit with Defendant Kengersky the next morning, at which time he denied receiving any relief from the Toradol, and complained of numbness in the fingers of his right hand. (<u>Id</u>. at p. 113). Upon examination, Plaintiff's shoulder had range of motion with no pain or obvious signs of distress; nonetheless, he was given a twelve-day supply of Prednisone to be taken orally for pain. (<u>Id</u>.). Plaintiff reported to sick call again on June 23, 2014, and was seen by a physician's assistant, who noted no medical emergency and advised Plaintiff to continue on his medication. (<u>Id</u>. at p. 109). The next day, Plaintiff returned to sick call complaining of increased pain in his upper right back and arm, and was examined by Defendant Kengersky, who noted that Plaintiff had an exaggerated response to the slightest touch, with no evidence of muscle spasm. (<u>Id</u>. at pp. 106-107). He was given another Toradol shot and was told to return for a follow-up the next morning. (<u>Id</u>. at 107).

Thus, it is quite apparent that Plaintiff continually received medical attention for his

complaints of shoulder and upper back pain during the time period at issue. Since Plaintiff was under the care of medical personnel, his claims of deliberate indifference against Defendants Troublefield and Van Horn, who are non-medical personnel,[9] is not actionable. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004) ("Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"); <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993) (non-medical prison officials cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison medical staff).

As to Defendant Kengersky, it is beyond dispute that she provided medical care to Plaintiff on two occasions during the time period at issue, including the provision of pain medication and Toradol shots. Thus, Plaintiff's claims are primarily based on his dissatisfaction with the treatment that was given; however, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. <u>White</u>, 897 F.2d at 110.

Thus, summary judgment should be entered in favor of Defendants Troublefield, Van Horn, and Kengersky, and against Plaintiff, on Plaintiff's Eighth Amendment deliberate indifference claim pertaining to the period from June 19, 2014 to June 24, 2014.

---

9

Even though Defendant Van Horn has the title of Health Service Administrator, he is considered a non-medical prison official in the context of a Section 1983 denial of medical care claim. <u>See</u> <u>Spencer v. Beard</u>, 2010 WL 608276, *4 n. 5 (W.D.Pa. Feb. 17, 2010), citing Hull v. Dotter, 1997 WL 327551, *4 (E.D.Pa. June 12, 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. Dec. 1, 1995).

**2.      Eighth Amendment Claim v. Defendant Kengersky – June 25, 2014**

Plaintiff claims that Defendant Kengersky was deliberately indifferent to his serious medical needs by denying him medical treatment on the morning of June 25, 2014. This claim, too, is without merit.

Plaintiff's medical records indicate that Plaintiff was seen by Defendant Kengersky at 8:18 a.m. on the morning of June 25, 2014, at which time Plaintiff complained of continued extreme pain in his upper right back, which was not relieved by the Toradol shot he received on June 24. (ECF No. 28-6, Plaintiff's Medical Records, at p. 102). Defendant Kengersky noted that Plaintiff appeared in pain, but his reports of pain were inconsistent during his examination and did not correlate to the clinical findings, which were essentially normal. (Id. at p. 103). Nevertheless, he was administered a Methylprednisolone Acetate injection and was instructed to apply heat to the area. (Id.). Shortly thereafter, at approximately 8:55 a.m., Plaintiff was found in the Health Services Unit lobby on his knees and leaning forward on his head and shoulders. (ECF No. 28-7, Incident Report, at p. 2). Defendant Kengersky saw him and told an officer that there was no medical reason he should be lying on the floor like that, so Plaintiff was ordered to get up. (Id.). When he refused, Plaintiff was taken to the Special Housing Unit ("SHU") and given an incident report for refusing to obey an order. (Id.).

Later the same morning, at 11:53 a.m., Defendant Kengersky was called to the SHU after Plaintiff claimed he was paralyzed and dizzy, and she found Plaintiff lying on the floor of the holding cell rocking back and forth. (ECF No. 28-6, Plaintiff's medical records, at p. 96). He complained of low back pain, stating that he had a herniated disc, yet he was pulling his legs in

and out of his chest and moved all of his extremities without difficulty. (Id. at p. 97). Because

Plaintiff refused to stand up, a more complete examination could not be performed, and he was

given a sixty-day prescription of Amitriptyline tablets for his low back pain. (Id.).[10]

The foregoing treatment by Defendant Kengersky belies Plaintiff's claim that she was

deliberately indifferent to Plaintiff's medical needs on the morning of June 25, 2014. Once again,

it is apparent that Plaintiff is simply dissatisfied with the medical treatment that was provided by

Defendant Kengersky, which is insufficient to state an Eighth Amendment claim. Thus,

Defendant Kengersky should be granted summary judgment on this claim.

### 3. Eighth Amendment Claim v. Defendants Meeks, Walt, Van Horn, Kengersky, Stauffer, and Siffrinn

Plaintiff alleges that Defendants Meeks, Walt, Van Horn, Kengersky, Stauffer, and

Siffrinn failed to protect him from abuse and subjected him to unnecessary pain and suffering by

disregarding his medical needs after he allegedly suffered his injuries on June 25, 2014. In

particular, Plaintiff claims that Defendants Meeks, Stauffer, and Siffrinn denied him emergency

medical treatment after learning of purported staff abuse and injuries he suffered on June 25,

2014, while Defendants Walt, Kengersky, and Van Horn allegedly failed to re-examine his back

and shoulder injuries until October 27, 2014, approximately four months after their onset. These

claims are without merit.

Plaintiff's medical records indicate that Defendant Kengersky visited Plaintiff in the SHU

_____

[10]
Plaintiff was later seen three more times by medical staff during the afternoon and evening of June 25, 2014, for various complaints of back pain and to administer prescribed medication. (Id. at pp. 80, 83, 87-90).

at approximately 2:00 p.m. on June 26, 2014, at which time Plaintiff stated his pain was gone, but his muscles were twitching. Plaintiff requested his cane, but was told he could not have one in the SHU. (ECF No. 28-6, Plaintiff's medical records, at p. 78). Later the same day, at around 8:45 p.m., Plaintiff was seen at Health Services by Defendant Van Horn, who assessed Plaintiff's complaints of back, right shoulder, and upper extremity pain. (Id. at pp. 72-74). Defendant Van Horn noted that "[d]uring exam, patient's somatic subjective complaints were not reproducible whatsoever," and he was assessed with muscle spasm. (Id. at pp. 73-74). The next day, Defendant Walt had a face-to-face encounter with Plaintiff and asked about his condition. (Id. at p. 70). Plaintiff responded that pain medication was working, although he was experiencing numbness in his right index finger and thumb and asked for a sling. Defendant Walt extended Plaintiff's Percocet prescription and told Plaintiff that a sling would be issued to him with his evening medication. (Id.).

On July 3, 2014, Plaintiff was seen again by Defendant Kengersky for a follow-up visit regarding Plaintiff's upper back strain. (Id. at pp. 65-66). Plaintiff reported that his pain medication was working, the numbness in his right index finger and thumb was improving, and the muscle spasm in his right lumbar spine was resolved. Defendant Kengersky noted a normal shoulder examination, with full range of motion, and scheduled Plaintiff for a follow-up visit in two weeks. (Id. at p. 66). Plaintiff returned for a follow-up visit with Defendant Kengersky on July 21, 2014, during which his right shoulder and neck were examined and x-rays of the neck were ordered to rule out cervical disc problems. (Id. at pp. 62-64). Defendant Kengersky noted tenderness in the upper right arm and thoracic area, with full range of motion, and that an x-ray

18

of Plaintiff's right shoulder was negative. (<u>Id</u>. at pp. 62, 64).

On August 11, 2014, Plaintiff spoke with Defendant Kengersky about reducing the dosage of his low back pain medication because it was making him drowsy and his pain had improved. (<u>Id</u>. at p. 60). This request was fulfilled on August 26, 2014, when Plaintiff's pain medication was reduced from 50mg to 25mg. (<u>Id</u>. at p. 53). On August 21, 2014, Defendant Van Horn noted that he observed Plaintiff vigorously playing the drums with both arms moving rapidly, including overhead motions that he was instructed to avoid by medical staff. (<u>Id</u>. at p. 50). As a result, Defendant Van Horn removed Plaintiff's lower bunk restriction and added "feigning illness" to his ICD 9 problem code. (<u>Id</u>. at p. 47).

On August 28, 2014, Plaintiff had a follow-up visit with Defendant Kengersky for his neck and right shoulder pain, and reported "feeling much better," although he continued to experience aching in his right shoulder socket and some numbness in his right thumb and index finger. (<u>Id</u>. at pp. 43-45). Defendant Kengersky noted that the x-ray of Plaintiff's neck revealed disc degeneration of C5-C6, but Plaintiff indicated that his playing drums was actually helping it feel better. (<u>Id</u>. at p. 43). Plaintiff's pain medication was reduced from 25mg to 10mg, and he was referred to physical therapy for his chronic neck and low back pain. (<u>Id</u>. at pp. 44-45). On September 24, 2014, Plaintiff failed to show for a scheduled follow-up appointment with Defendant Kengersky. (<u>Id</u>. at p. 37).

On October 15, 2014, Plaintiff reported to Defendant Kengersky at Health Services complaining of pain in his neck, lower back, right hip, and right shoulder, and indicating that he ran out of pain medication a month earlier. (<u>Id</u>. at pp. 20-22). On examination, Defendant

Kengersky noted "muscle spasms up and down the spine bilaterally," with "[a]t least 6 knots felt on exam," and ordered x-rays of Plaintiff's right shoulder and lumbar spine. (Id. at pp. 21-22). Plaintiff followed up with Defendant Kengersky on October 27, 2014, and reported that he had pain radiating from his neck down through his lower back and into his testicles and left leg, as well as continued pain in the right shoulder. (Id. at p. 17). Defendant Kengersky noted that Plaintiff's x-rays revealed an "AC joint space that was normal but on the larger side of normal," and continued Plaintiff's medications and exercise regimen. (Id. at pp. 17-18).

The foregoing medical record evidences Plaintiff's continual receipt of medical attention and treatment for his right shoulder and back complaints, which belie his claims of deliberate indifference. The record provides no evidence of emergency medical needs or perceived staff abuses that were not addressed by one or more of the medical Defendants, in particular. Thus, Defendants should be granted summary judgment on this claim.

### 4. Retaliation Claim v. Defendants Kengersky, Troublefield, Siffrinn, and Van Horn

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158.

In this case, Defendants argue that Plaintiff cannot show he suffered an "adverse action" sufficient to establish the second prong of the test. The Court disagrees. Plaintiff has alleged several incidents that he claims were retaliatory in nature, including, *inter alia*, the Defendants' issuance of allegedly false misconducts on June 25, 2014, and August 21, 2014, that led to sanctions that deterred him from making complaints; threats made by Defendant Troublefield to put Plaintiff back in the SHU if he didn't stop sending e-mails complaining about staff abuse and injuries, and to list him as a sexual predator in the BOP's computer system; Defendant Stauffer's and Siffrinn's rejection of his grievances for allegedly false reasons; and Defendant Siffrinn's delayed processing of his complaints. As evidence of the latter, Plaintiff has submitted copies of Requests for Administrative Remedy that he filed on June 30, 2014, but were not addressed initially until August 28, 2014. (ECF No. 35-14, Plaintiff's Exhibits, at pp. 6, 12).

Defendants argue that Plaintiff's only sanction for each of the allegedly false misconducts was loss of commissary privileges, and that this, as well as the purported threats by Defendant

Troublefield, did not "impose an atypical and significant hardship on the ordinary incidents of an inmate's prison life." <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002), <u>citing</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995). (ECF No. 28 Defendants' Brief, at p. 30-31). However, the <u>Sandin</u> standard does not apply to the determination of whether Plaintiff can demonstrate an adverse action for purposes of establishing a retaliation claim. Rather, to satisfy the second prong of a *prima facie* retaliation claim, Plaintiff must demonstrate that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001), <u>quoting</u> <u>Seiverling</u>, 229 F.3d at 225. This he has done. <u>See</u> <u>Tate v. Dragovich</u>, 2003 WL 21978141, at *4 (E.D.Pa. Aug. 14, 2003), <u>citing</u> <u>Bell v. Johnson</u>, 308 F.3d 594, 603 (6th Cir. 2002) ("Unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should survive a motion for summary judgment as a matter of law").

Since Defendants have cited no other reason for entering summary judgment on Plaintiff's retaliation claim, their motion for summary judgment as to such claim should be denied.

### **5.** **Opening Legal Mail Claim v. Defendant Stauffer**

Plaintiff alleges that since January 20, 2014, Defendant Stauffer has violated his First Amendment rights by continually opening and reading his legal mail outside of his presence, which has allegedly "disabled Plaintiff's ability to privately communicate with Attornies [sic], Public Officials and Authorities." (ECF No. 16, Amended Complaint, at p. 29, ¶ 1, 3).

The Supreme Court has recognized that prisoners have protected First Amendment

interests in both sending and receiving mail. See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). In particular, prisoners may establish a violation of the First Amendment without establishing an actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside the prisoner's presence. Jones v. Brown, 461 F.3d 353, 359 (3d Cir.2006). According to BOP regulations, incoming "special mail," which includes mail from United States courts and attorneys, may be opened "only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail." 28 C.F.R. §§ 540.2(c), 540.18(a). However, to receive special handling, the incoming mail must be marked "Special Mail–Open only in presence of the inmate" and the sender must be adequately identified on the envelope. 28 C.F.R. 540.2(c), 540.18(a). If the incoming mail does not meet these requirements, it may be treated as "general correspondence," which can be opened, inspected, and read. Id. §§ 540.14(a) 540.18(b).

Here, Plaintiff's amended complaint fails to indicate whether the "legal mail" at issue was properly marked in accordance with BOP regulations, such that Defendant would be on notice that it was to be opened only in Plaintiff's presence. Thus, he has failed to state a claim of improper opening of his legal mail in violation of his First Amendment rights, and such claim should be dismissed. See Richardson v. U.S., 2010 WL 2571855, at *6 (M.D.Pa. June 22, 2010).

To the extent Plaintiff is attempting to state a claim of denial of access to the courts, this claim must also fail. Although the Supreme Court has recognized that prisoners have a protected right to "adequate, effective and meaningful" access to the courts, Bounds v. Smith, 430 U.S. 817 (1977), a plaintiff must demonstrate actual injury stemming from the denial of access. Lewis v.

23

Casey, 518 U.S. 343 (1996).[11] The actual injury requirement "derives from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Id. at 349. See also Stokes v. Gehr, 399 Fed.Appx. 697, 699 (3d Cir. 2010) (the actual injury requirement articulated in Lewis is "derived from principles of standing … an unwaivable constitutional prerequisite").

A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher, 536 U.S. at 415. "To that end, prisoners must satisfy certain pleading requirements:  The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id.

Furthermore, a plaintiff must demonstrate intent on the part of the defendants. The Third Circuit has explained:

> A denial of access claim is available where the state officials *wrongfully and intentionally* conceal information crucial to a person's ability to obtain

---

11
Prisoners are limited to proceeding on access to courts claims challenging either their sentence (by direct or collateral attack) or their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355.

redress through the courts, and so *for the purpose of frustrating that right*, and that concealment, and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 445 (3d Cir. 2005). See also Burkett v. Newman, 2012 WL 1038914, at *3 (W.D. Pa. Fed. 21, 2012).

So then, in order to support his access to courts claims, Plaintiff is required to demonstrate that he has lost the opportunity to pursue a non-frivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendants had the requisite intent to deny his constitutional right of access to courts. Plaintiff has failed to establish any of these elements. Thus, to the extent Plaintiff attempts to state a claim of denial of access to the courts, such claim should be dismissed.

## 6. HIPAA Claim v. Defendants Troublefield and Siffrinn

Plaintiff alleges that Defendants Troublefield and Siffrinn violated his rights under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d ("HIPAA") by discussing his private medical information over the phone with third parties without his consent, including attorneys for defendants in a civil suit Plaintiff has pending in the United States District Court for the Western District of New York.

HIPAA provides, in pertinent part, that "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another

agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(g)(1)(D). Defendants argue that Plaintiff's claim must be dismissed because HIPAA does not create a private cause of action. The Court agrees.

Although the Third Circuit has not yet addressed the issue, every Circuit Court that has addressed the matter has concluded that HIPAA provides neither an express nor an implied private right of action to an aggrieved patient. See, e.g., Carpenter v. Phillips, 419 Fed.Appx. 658 (7th Cir. 2011); Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Seaton v. Mayberg, 610 F.3d 533 (9th Cir. 2010), cert. denied, 562 U.S. 1222 (2011); Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); Miller v. Nichols, 586 F.3d 53 (1st Cir. 2009); Acara v. Banks, 470 F.3d 569, 570-72 (5th Cir. 2006). Moreover, district courts in this Circuit have similarly concluded that HIPAA does not create a private right of action. See, e.g., Jackson v. Mercy Behavioral Health, 2015 WL 401645, at *4 (W.D.Pa. Jan. 28, 2015) ("because such [HIPAA] actions are within the exclusive jurisdiction of the Department of Health and Human Services and the OCR, we do not have subject matter jurisdiction over [plaintiff's] claim"); Cortino v. Karnes, 2012 WL 2921785, at *14 (M.D.Pa. Jan. 25, 2012) (collecting cases); Carney v. Snyder, 2006 WL 2372007, at *4 (W.D.Pa. Aug. 15, 2006) ("Insomuch as we adopt the reasoning that no right is implied [by HIPAA], we also find that so too a remedy cannot be found within the [HIPAA] statute, and both are required").

In light of the foregoing, Plaintiff's purported HIPAA claim against Defendants Troublefield and Siffrinn must be dismissed.

**7.    Obstruction of Justice Claim v. Defendants Meeks, Kengersky, Van Horn, Troublefield, Stauffer, and Siffrinn**

Plaintiff claims that Defendants Meeks, Kengersky, Van Horn, Troublefield, Stauffer, and Siffrinn, are liable for obstruction of justice. The allegations regarding this claim are murky, at best. Apparently, Plaintiff is claiming that the named Defendants have denied him emergency medical treatment in an attempt to silence him regarding the death of his friend and fellow inmate, Joe Bielewicz, who allegedly died as a result of Defendants' denial of emergency medical treatment, on July 25, 2014. In particular, Plaintiff claims that Defendants denied him emergency medical treatment "to continue, in concert, the cover up and hiding of evidence, from any formal OFFICIAL INVESTIGATION resulting in obstruction of justice." (ECF NO. 16, Amended Complaint, at p. 35, ¶ 2) (emphasis in original). Thus, at base, this claim is dependent on Plaintiff's corollary claim that Defendants were deliberately indifferent to his serious medical needs by failing to provide him with emergency medical treatment, which this Court has already found to be without merit. As a result, this claim is groundless and should be dismissed.

**8.    Eighth Amendment Claim v. Defendant Kengersky**

Finally, Plaintiff claims that Defendant Kengersky violated his Eighth Amendment rights by discontinuing his chronic care medication for a period of 18 days, from September 24, 2014, to October 20, 2014, as punishment for missing an appointment. This claim is without merit.

According to the medical records, Plaintiff missed a scheduled medical appointment with Defendant Kengersky on September 24, 2014, at which Defendant Kengersky intended to review

Plaintiff's prescriptions. (ECF No. 28-6, Plaintiff's medical records, at p. 36). Approximately one month earlier, on August 28, 2014, Defendant Kengersky prescribed for Plaintiff a 90 day supply of Amitriptyline tablets for his low back pain and lumbago. (Id. at p. 44). On October 6, 2014, Plaintiff submitted an Inmate Request to Staff reporting that he was out of his medication for esophageal reflux. (Id. at p. 284). In response, Defendant Kengersky met with Plaintiff to review and renew his medications. At such time, Defendant Kengersky renewed Plaintiff's prescriptions for Omeprazole and a Mometasone Furoate Inhaler, and also prescribed a 30 day supply of Naproxen for pain, as needed. (Id. at p. 35). On October 13, 2014, Plaintiff submitted another Inmate Request to Staff complaining that he needed more medications for his esophageal reflux and assorted pains. (Id. at p. 283). On October 15, 2014, Plaintiff was reminded that his prescriptions had already been refilled. (Id.). On the same date, Plaintiff had a follow-up visit with Defendant Kengersky regarding his complaints of neck, lower back, and right hip pain, at which time Plaintiff complained that he had run out of his pain medication a month earlier, even though the medical records indicate otherwise.

Thus, there is no evidence that Defendant Kengersky deliberately discontinued Plaintiff's chronic care medication in violation of his Eighth Amendment rights, and summary judgment should be entered in Defendants' favor, accordingly.

### 9.    Unidentified Defendants

As noted earlier, Plaintiff has named five unidentified Defendants: "Medical Nurse," "Medical Nurse 2," "L.T.," "Officer 1," and "Officer 2." None of these individuals has been served with the complaint in this matter, nor has an attorney entered an appearance on behalf of

any of them. In the Third Circuit, "John Doe" claims are ordinarily disregarded absent a showing by the plaintiff that they are indispensable to the litigation. See Young v. Quinlan, 960 F.2d 351, 356 n. 9 (3d Cir. 1992), citing Kiser v. General Electric Corp., 831 F.2d 423, 426 n. 6 (3d Cir. 1987). No such showing has been made here. Thus, said Defendants should be dismissed from this case.

### III       CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, for summary judgment [ECF No. 27] be denied as to Plaintiff's retaliation claim against Defendants Kengersky, Troublefield, Siffrinn, and Van Horn, but granted in all other respects. As a result, all Defendants other than Defendants Kengersky, Troublefield, Siffrinn, and Van Horn should be terminated from this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. §636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 4, 2016

cc:     The Honorable Barbara Rothstein
        United States District Judge