**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID GAMBINO, | Civil Action No. 1:14-cv-236 (BJR) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | GRANTING PLAINTIFF'S MOTION |
| FEDERAL CORRECTIONAL | FOR SUMMARY JUDGMENT. |
| INSTITUTION – MCKEAN, et al., | |
| Defendants. | |

Before the Court is the Report and Recommendation of Magistrate Judge Susan Paradise Baxter (Doc. No. 60), which recommends that Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. No. 27) be denied as to Plaintiff's retaliation claim against Defendants Kengersky, Troublefield, Siffrinn, and Van Horn, but granted in all other respects. After reviewing the Report and Recommendation, Plaintiff's Objections, Defendants' Objections, and the relevant filings, the Court declines to adopt the Report and Recommendation, and GRANTS Defendants' Motion for failure to exhaust administrative remedies.

### A. Relevant Procedural History[1]

On September 8, 2014, Plaintiff David A. Gambino, a prisoner formerly incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"),[2] filed this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff subsequently filed an amended complaint on

---

[1] These facts are adopted from the Report and Recommendation.

[2] Plaintiff is presently incarcerated at the Federal Correctional Institution at Cumberland, Maryland.

November 21, 2014, which superseded the original complaint and is the operative pleading in this case. (Doc. No. 16.) Named as Defendants in the amended complaint are the following alleged staff members at FCI-McKean: Warden Bobby Meeks, Warden; Assistant Warden "Hubbard" [3]; Clinical Director Dr. Michael Walt; Health Services Administrator Pieter Van Horn; Lieutenant Franklin Troublefield; Case Manager Keith Stauffer; Correctional Officer John Siffrinn; and five unidentified Defendants, named as "Medical Nurse," "Medical Nurse 2," "L.T.," "Officer 1," and "Officer 2." [4]

In his *pro* se amended complaint, Plaintiff lists multiple counts alleging that one or more of the Defendants violated his constitutional rights and caused him injury: (1) Defendants Troublefield, Van Horn, and Kengersky allegedly denied him emergency medical treatment from June 19, 2014 to June 24, 2014, which caused him to suffer injury on June 25, 2014 (Doc. No. 16 at 3-8); (2) Defendant Kengersky allegedly denied him medical treatment on the morning of June 25, 2014 (*id.* at 9-12); (3) Defendants Meeks, Walt, Van Horn, Kengersky, Stauffer, and Siffrinn allegedly failed to protect him from abuse and subjected him to unnecessary pain and suffering by disregarding his medical needs following his injury of June 25, 2014 (*id.* at 17-22); (4) Defendants Kengersky, Troublefield, Siffrinn, Van Horn, and Stauffer allegedly worked in concert to retaliate against him (*Id.* at 23-27); (5) since January 20, 2014, Defendant Stauffer has allegedly violated his First Amendment rights by reading his protected legal mail (*id.* at 28-30); (6) Defendants Troublefield and Siffrinn allegedly violated his rights under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d ("HIPAA") by discussing his private medical

---

[3] In their Brief, Defendants have informed the Court that there was no individual named "Hubbard" who worked at FCI-McKean in 2014. Thus, Defendant "Hubbard" should be terminated from this case.

[4] None of the unidentified Defendants has since been identified or served in this case by Plaintiff, nor has an attorney entered an appearance on behalf of any of them. As a result, it will be recommended that these Defendants be dismissed from this action, and Plaintiff's claims against these Defendants will not be considered here.

information over the phone with third parties without his consent. (*id.* at 31-33); (7) Defendants Meeks, Kengersky, Van Horn, Troublefield, Stauffer, and Siffrinn allegedly obstructed justice by failing to protect him as a witness to the purported wrongful death of a fellow inmate on July 25, 2014 (*id.* at 34-37); and (8) Defendant Kengersky allegedly violated his Eighth Amendment rights by discontinuing his medications and medical aids from September 4, 2014 to October 20, 2014 (*id.* at 38-40). Plaintiff seeks injunctive relief and monetary damages.

On March 16, 2015, Defendants filed a motion to dismiss Plaintiff's amended complaint or, in the alternative, motion for summary judgment (Doc. No. 27), asserting that: (i) Plaintiff has failed to exhaust his administrative remedies with regard to his claims; (ii) Plaintiff cannot demonstrate that Defendants were deliberately indifferent to either his serious medical needs or his health and safety; (iii) Non-medical Defendants cannot be held liable for Plaintiff's medical claims; (iv) Plaintiff cannot establish a First Amendment retaliation claim; (v) Plaintiff cannot establish a claim of either denial of access to the courts or interference with legal mail; (vi) HIPAA does not create a private right of action; (vii) Plaintiff does not have a constitutional right to see another inmate's records; (viii) Defendants Meeks, Walt, Troublefield, and Stauffer should be dismissed from this case because Plaintiff has failed to allege their personal involvement in the alleged constitutional violations; (ix) Defendants are entitled to qualified immunity; (x) Defendant Van Horn is entitled to absolute immunity; and (xi) all unidentified Defendants should be dismissed. Plaintiff has since filed a brief in opposition to Defendants' motion. (Doc. No. 35.)

This matter is now ripe for consideration.

## B. Standards of Review

When deciding a motion to dismiss, a court generally should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004). If a court considers other matters, a motion to dismiss should be converted to a motion for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993). If a motion to dismiss or a motion for judgment on the pleadings is converted into a summary judgment motion, the court must provide notice and an opportunity to oppose the motion. *See Hancock Industries v. Schaeffer,* 811 F.2d 225, 229 (3d Cir. 1987). The Court treats Defendants' Motion as one for summary judgment because Defendants label it as such and rely on evidence outside of the complaint. Plaintiff was on notice that Defendants were moving for summary judgment, and he had the opportunity to respond and to submit additional evidence of his own. (Doc. No. 35.)

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

4

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex*, 477 U.S. at 330; *see also Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex*, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. *Id.* at 325. "Instead, . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (A petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir.1997) (overruled on

other grounds); s*ee, e.g.*, *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## C. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff's complaint should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides: "no action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*[5]

### 1. Exhaustion Standard

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. *Grimsley v. Rodriquez*, 113 F.3d 1246 (Table), 1997 WL 2356136 (unpublished opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal

---

[5] It is not a plaintiff's burden to affirmatively plead exhaustion. *Jones v. Bock*, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[6] A plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. *Nyhuis v. Reno*, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("[W]e agree with the clear majority of courts that

district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7] The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Id.* at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d Cir. 2004) ("Based on our earlier discussion of the PLRA's legislative history, [ . . . ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

## 2. The Administrative Process Available to Federal Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to prison inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 107 U.S. at 217.

---

§ 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7] There is no "futility" exception to the administrative exhaustion requirement. *Banks v. Roberts*, 2007 WL 3096585, at \*1 (3d Cir.) (citing *Nyhuis*, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'")).

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall . . . present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). The Regional Director has thirty (30) days to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. *Id.* The General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

"If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Regulations also provide procedures for when an inmate fears that the filing of his grievance will jeopardize his well-being:

(d) Exceptions to initial filing at institution—

(1) Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the

8

Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14(d)(1).

### 3. Analysis

In support of their contention that Plaintiff failed to exhaust his administrative remedies, Defendants have submitted the Declaration of Kimberly Sutton, a Paralegal Specialist with the Federal Bureau of Prisons' Northeast Regional Office, who declares, in pertinent part:

> 5. A review of Sentry [the BOP's computerized database] shows that [Plaintiff] has not exhausted his available administrative remedies for any of the allegations [Plaintiff] raised in his Amended Complaint.
>
> 6. [Plaintiff] filed a Request for Administrative Remedy (No. 792502-F1) at FCI McKean on September 3, 2014, concerning a medical visit and perceived harassment. That request was rejected that same date because [Plaintiff] failed to ask for a remedy. [Plaintiff] did not re-file his Request for Administrative Remedy concerning this issue again. . . .
>
> 7. [Plaintiff] filed a Request for Administrative Remedy (No. 792505-F1) at FCI McKean on September 3, 2014, concerning his perceived harassment by staff. That request was rejected that same date because Plaintiff again failed to ask for a remedy and attached too many continuation pages. [Plaintiff] did not re-file his Request for Administrative Remedy concerning this issue again. . . .
>
> 8. [Plaintiff] filed no other Request for Administrative Remedy concerning any other issue.

(Doc. No. 28-1 ¶¶ 5-8).

In response, Plaintiff alleges that Defendants denied him access to the grievance process by refusing to correctly process his grievances, making retaliatory threats, and issuing false misconducts against him. (Doc. No. 35 at 13). In particular, Plaintiff contends that Defendants Stauffer and Siffrinn delayed the filing of his administrative remedy requests for up to four months (*id.* at 24 ¶ 6); Defendant Troublefield threatened to return him to the Special Housing Unit and to

9

label him as a sexual predator if he continued to complain of staff harassment and abuse (*id.* at 21 ¶¶ 1, 2); and Defendants worked in concert to take away his privileges through the issuance of false misconducts, which allegedly hindered his ability to access the grievance system (*id.* at 22-23, ¶¶ 3-5). In addition, Plaintiff has submitted a number of exhibits that appear to partially support these allegations. (Docs. No. 35-3 and 35-4.)[8]

The Report and Recommendation proposes that Plaintiff's claims should not be dismissed based upon Plaintiff's failure to comply with the PLRA's exhaustion requirements because his allegations and supporting documents "raise a genuine issue of material fact as to whether the administrative remedy process was indeed made available to Plaintiff." (Doc. No. 60 at 12.) However, the Report and Recommendation does not reckon with 28 C.F.R. § 542.18, which provides procedures for exhausting a claim that is not timely responded to by the government, or § 542.14(d)(1), which provides procedures for exhausting a claim when the inmate fears the filing of a grievance will jeopardize his well-being. Specifically, the delay Plaintiff suffered while waiting for a response to his grievance did not excuse him from the requirement that he first seek an administrative remedy; it permitted him to consider that delay a denial and appeal to the next level. 28 C.F.R. § 542.18. In other words, when the government does not respond to a prisoner's grievance within the required timeline, the inmate may either continue waiting for a response or appeal to a higher level of review. The exhaustion procedures do not permit Plaintiff to abort the administrative process and file his grievance in federal court.

Similarly, Plaintiff was not excused from the PLRA's exhaustion requirement when Defendants threatened to retaliate if he filed a grievance. The Third Circuit has recognized that in

---

[8] These exhibits contain copies of two administrative remedy requests that were filed by Plaintiff on June 30, 2014, but were not responded to until August 28, 2014, and a third administrative remedy request that was filed by Plaintiff on September 24, 2014, but was not responded to until January 27, 2015.

such instances, a plaintiff must exhaust by filing his complaint directly with the Regional Director under 28 C.F.R. § 542.14(d)(1), or otherwise allege that Defendants prevented him from pursuing this alternative procedure for exhaustion. *See Davis v. Saylor*, No. 14-2693, 2015 WL 6735904, at \*3 (3d Cir. Nov. 4, 2015). In *Davis*, the plaintiff argued that exhaustion was not required because he brought claims for retaliation and feared reprisals from prison staff for filing a grievance. *Id.* at \*2. The Third Circuit held otherwise:

> Davis concedes that the BOP has an established Administrative Remedy Program, but argues that it was effectively unavailable to him because he had been threatened by Officer Brininger with further retaliation if he 'file[d] anything.' While we have recognized that a prisoner's failure to exhaust may be excused when the actions of prison staff render the administrative remedies 'unavailable,' we cannot say that there were no remedies available to Davis here. Even assuming that Officer Brininger's threats deterred Davis from lodging an informal complaint with prison staff under 28 C.F.R. § 542.13, or from filing a formal request with the correctional counselor under 28 C.F.R. § 542.14(c), Davis could have bypassed the institution and filed a complaint directly with the Regional Director under 28 C.F.R. § 542.14(d)(1), if he believed that his safety or well-being was in danger. Given that Davis did not provide any argument or evidence in the District Court suggesting that this alternative procedure was unavailable to him, the District Court properly entered summary judgment against him.

*Id.* at \*3. Because Plaintiff has likewise failed to provide any argument or evidence suggesting that the procedures outlined in 28 C.F.R. § 542.14(d)(1) were unavailable to him, summary judgment is also properly entered against him.

The Report and Recommendation cites three cases in support of the proposition that exhaustion is not required when the administrative remedy process is unavailable. (Doc. No. 60 at 11-12.) These cases are distinguishable. In *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), the Third Circuit held that the prisoner was excused from exhaustion requirements because prison officials refused to provide the prisoner with the necessary grievance forms. In *Berry v. Klem*, 283 Fed. App'x 1, 4-5 (3d Cir. March 20, 2009), the Court noted in passing that threats of retaliation "put in question the availability of the remedy," but held, "we express no opinion on whether

11

[Plaintiff] has exhausted his administrative remedies" because it concluded the district court erred in converting Defendants' motion to dismiss into a motion for summary judgment without providing Plaintiff with appropriate notice and an opportunity to respond. And in *McKinney v. Guthrie*, 309 Fed. App'x 586, 589 (3d Cir. 2009), the Court remanded because it was unclear why the district court *sua sponte* reversed its prior denial of summary judgment and determined that administrative remedies had not been exhausted. None of these cases holds that threats of retaliation excuse an inmate from complying with the remedy supplied by 28 C.F.R. § 542.14(d)(1) specifically or the PLRA's exhaustion requirements generally.

Because Plaintiff's failure to exhaust disposes of this case, it is unnecessary to reach the merits of any of the nine claims adjudicated by the Magistrate Judge. For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment (Doc. No. 27). Because Plaintiff's Motion for Relief from Judgment of Denied Claims (Doc. No. 92) does not cure or otherwise address his failure to exhaust, the Motion is DENIED. The Clerk shall send copies of this Order to the parties. CASE DISMISSED.

Dated this 31st day of March, 2017.

Barbara Jacobs Rothstein
U.S. District Court Judge